# 25-1873-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

━━━ ➤➤ ◄◄ ━━━

Caonaissa Won,

*Plaintiff-Appellant,*

*v.*

Amazon.com Services, LLC,

*Defendant-Appellee,*

Amazon.com Services, Inc.,

*Defendant.*

─────────────

*On Appeal from the United States District Court
for the Eastern District of New York*

## REPLY BRIEF
## FOR PLAINTIFF-APPELLANT

LaDonna M. Lusher
Alanna Sakovits
Virginia & Ambinder, LLP
*Attorneys for Plaintiff-Appellant*
40 Broad Street, 7th Floor
New York, New York 10004
212-943-9080



PHP (212) 719-0990
appeals@phpny.com

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT .......................................................................................................2

I. Amazon Intentionally Conflates Various Uses of the Word "Accommodation" in an Attempt to Distract this Court ............................2

II. The Record Reflects, and Amazon has Repeatedly Admitted, that Amazon Rejected Won's Request Because It Was for Caregiving Needs And Would Have Approved the Request Had It Been For Her Own Educational Needs ......................................................................................................6

    A. Amazon's New Factual Arguments Raised For the First Time on Appeal Are Not Supported by the Record but At Best Demonstrate Disputes of Material Fact That Must Be Submitted to a Jury .....................................7

    B. Amazon's Attempts to Distinguish *Chaplin* and Unprotected Activities Fall Short ........................................................................................12

III. A Plain Reading of the NYCHRL, Legislative Intent, and Agency Guidance all Support Won's Position ....................................................14

    A. Statutory Interpretation and Legislative Intent Support Won's Position ...............................................................................................14

    B. The NYCCHR Guidance Supports Won's NYCHRL Claim ..................18

    C. The NYCCHR Guidance Should be Granted Deference, or at the Very Least, Deemed Persuasive ......................................................................19

    D. Subsequent Statutes Have No Bearing on Won's NYCHRL Claim........23

IV. Amazon's Discriminatory Denial of Won's Scheduling Request is Independently Actionable and the Hostile Comments Only Bolster Won's Claim ....................................................................................................27

CONCLUSION ................................................................................................28

## TABLE OF AUTHORITIES

CASES                                                                        PAGE

*AMG Capital Mgmt., LLC v. FTC,*
593 U.S. 67 (2021)..................................................................................26

*Andryeyeva v. New York Health Care, Inc.,*
33 N.Y.3d 152 (2019) ...........................................................................20

*Bldg. Trades Emplrs. Educ. Ass'n v. McGowan,*
311 F.3d 501 (2d Cir. 2002) ..................................................................21

*Chaplin v. Permission Data, LLC,*
2022 N.Y. Misc. LEXIS 35481, 2022 WL 2916778
(N.Y. Sup. Ct., N.Y. Cnty. July 25, 2022)..............................................12

*De la Rosa v. 597 Broadway Dev. Corp.,*
2015 U.S. Dist. LEXIS 158089 (S.D.N.Y. Aug. 4, 2015).......................20

*Hernandez v. Kaisman,*
957 N.Y.S.2d 53 (1st Dep't 2012)...........................................................28

*Huntley v. City of New York,*
2024 WL 3070013 (N.Y. Sup. Ct. June 20, 2024) ..................................27

*Ibhawa v. N.Y. State Div. of Hum. Rts.,*
42 N.Y.3d 744 (N.Y. 2024) ...................................................................22

*Jennifer Shin v. NBC Universal Media, LLC,*
2025 U.S. Dist. LEXIS 22561 (S.D.N.Y. Feb. 7, 2025) .........................26

*Long Island Hous. Servs., Inc. v. NPS Holiday Square LLC,*
2023 U.S. Dist. LEXIS 12330 (E.D.N.Y. 2023)......................................21

*Matter of DaimlerChrysler Corp. v. Spitzer,*
7 N.Y.3d 653 (2006) ..............................................................................15

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
715 F.3d 102 (2d Cir. 2013)..........................................................15, 27, 28

*Owens v. PricewaterhouseCoopers LLC*,
786 F. Supp. 3d 831 (S.D.N.Y. 2025) ....................................................................21

*Palmer v. Cook,*
65 Misc. 3d 374 (Sup. Ct. Queens Cnty. Aug. 5, 2019) ..........................................27

*Prerna Singh v. MeetUp LLC*,
750 F. Supp. 3d 250 (S.D.N.Y. Aug. 22, 2024) .....................................................21

*Prerna Singh v. Meetup LLC*,
2024 U.S. Dist. LEXIS 198268 (S.D.N.Y. Oct. 31, 2024)......................................21

*Ramos v. SimplexGrinnell LP*,
740 F.3d 852 (2d Cir. 2014) ...................................................................................21

*Salvati v. Eimicke,*
72 N.Y.2d 784 (N.Y. Ct. Appeals 1988) .................................................................22

*Samiento v. World Yacht Inc.,*
10 N.Y.3d 70 (2008) ..........................................................................................15, 20

*Van Vorst v. Lutheran Healthcare,*
2020 U.S. Dist. LEXIS 234633 (E.D.N.Y. 2020) ...................................................20

*Won v. Amazon.Com Servs. LLC*,
2025 U.S. Dist. LEXIS 208208 (E.D.N.Y. Oct. 21, 2025).......................................2

*Won v. Amazon.com Servs. LLC,*
No. 26-cv-593 (E.D.N.Y. filed Feb. 3, 2026) ..........................................................2

iii

## STATUTES

N.Y.C Admin. Code § 8-101 ...................................................................................22

N.Y.C. Admin. Code § 8-107, *et seq.*
(New York City Human Rights Law ("NYCHRL"))......................................*passim*

N.Y.C. Admin. Code § 8-107 (1)..............................................................................24

N.Y.C. Admin. Code § 8-107 (1)(a)(3) ....................................................................15

N.Y.C. Admin. Code § 8-107 (15)(a) ........................................................................24

N.Y.C. Admin. Code § 8-107 (22)(a) ........................................................................24

N.Y.C. Admin. Code § 8-107 (27)(b)........................................................................24

N.Y.C. Admin. Code § 20-911, *et seq.*
(Earned Safe and Sick Time Act ("ESSTA"))..................................22, 23, 24, 25

N.Y.C Admin. Code 20-913(l) .................................................................................25

N.Y.C. Admin. Code § 20-914(a)(2) .........................................................................26

N.Y.C. Admin. Code § 20-918(b)..............................................................................26

Uniform Services Employment and Reemployment Act of 1994,
38 USC §§ 4301-4335 *et seq.* ("USERRA") ............................................................2

## Other Authorities

McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 191-194 (1971 ed)........15

The New York City Human Rights Law ("NYCHRL"), its legislative history, guidance from the New York City Commission of Human Rights ("NYCCHR"), and related caselaw clearly establish that, because Amazon permits employee schedule changes for non-legally required reasons, such as to attend school, it must permit similar schedule changes due to caregiving obligations. Amazon improperly denied Caonaissa Won's request for a modest schedule adjustment of leaving 15 minutes early and arriving 15 minutes later solely because she needed it for caregiving despite that Amazon's policy permits the same type of schedule adjustments for non-caregiving reasons. This unequal treatment on account of caregiver status constitutes discrimination under the NYCHRL.

Amazon repeatedly admitted in its 56.1 Statement and underlying motion papers for summary judgment that it would have granted Won's schedule modification request if she needed it for her own schooling, and not for her caregiving duties. Now, for the first time as part of this appeal, Amazon argues that the problem was Won's specific scheduling request and asserts that it would not have been granted for *any* reason. This complete flipflop on an essential fact Amazon previously admitted is impermissible on appeal. It is also a telling admission that Amazon knows its treatment of Won is impermissible under the NYCHRL. At a minimum, Amazon's new factual arguments are disputed and not supported by the record, thus, genuine issues of material fact remain precluding summary judgment.

1

A jury could find that Amazon's refusal to grant Won's schedule request for her caregiving obligations – which it would have allowed if the reason had been for Won's own education – constitutes unlawful discrimination in violation of the NYCHRL. As such, the District Court's Order and Judgment granting Amazon's motion for summary judgment and dismissing Won's NYCHRL discrimination claim must be vacated.[1]

## ARGUMENT

### I. Amazon Intentionally Conflates Various Uses of the Word "Accommodation" in an Attempt to Distract this Court

Amazon's assertion that the NYCHRL does not require employers to provide scheduling accommodations for caregiver status is nothing more than a straw man

---

[1] Won's appeal is solely related to the District Court's Order and Judgment in this action. Amazon's reference to an entirely separate action filed by Won that alleges Amazon failed to pay military members for their military leaves of absence in accordance with the Uniform Services Employment and Reemployment Act of 1994, 38 USC §§ 4301-4335 *et seq.* ("USERRA") is entirely distinct and wholly irrelevant to this appeal. [Resp. Br. p.14 (citing *Won v. Amazon.com Servs. LLC*, No. 21-CV-2867 (E.D.N.Y. filed May 5, 2021) (the "Military Leave Action")).] Nonetheless, Amazon misleadingly states that Won's Military Leave Action was dismissed, without clarifying that the District Court did so without prejudice and explicitly left the door open for Won to refile. *Won v. Amazon.Com Servs. LLC*, 2025 U.S. Dist. LEXIS 208208, at *13-14 (E.D.N.Y. Oct. 21, 2025) ("To be sure, this ruling does not doom Won's case…. And if properly presented to the court, Won's two newly raised periods of leave might very well provide her standing."). Indeed, Won has filed a new lawsuit alleging her USERRA claims, which remains pending. *See Won v. Amazon.com Servs. LLC*, No. 26-cv-593 (E.D.N.Y. filed Feb. 3, 2026).

2

fallacy meant to distract this Court from Won's true arguments. Won has *never* maintained that the NYCHRL requires reasonable accommodations for caregivers akin to the requirements for other protected categories under the NYCHRL. [Resp. Br. pp.19-20; ASA054 ("Won does not argue that Amazon had an independent duty to grant her a reasonable accommodation solely because of her caregiving needs, or that the NYCHRL requires employers to provide reasonable accommodations to caregivers, like those required for religious observance or disabilities.] To the extent an employer grants work schedule adjustments to certain employees only because those adjustments constitute reasonable accommodations under the NYCHRL, such as for a disability or religious observance, Won acknowledges that denial of similar schedule adjustments to caregivers would not be discriminatory.

Rather, Won maintains that under the NYCHRL, Amazon has a duty to grant the same employment benefit, such as flexible scheduling, for caregiving needs because it grants such benefits for other non-protected reasons, such as for a worker's own educational pursuits. [ASA054.] This is entirely different from the legally mandated accommodations required for disability or religion under the NYCHRL, and the distinction has been repeatedly set forth by Won. Any attempt by Amazon to conflate Won's arguments are meritless and must be disregarded.

Likewise, Amazon's assertion that Won referred to her schedule adjustment request as an "accommodation" is a red herring and legally irrelevant. [Resp. Br.

p.20.] Won's use of the word "accommodation" merely mirrors the terminology *used by Amazon* in its own policy to refer to schedule adjustments, including in Amazon's "Temporary school schedule adjustment" policy ("School Schedule Policy"). [SA14-15.] Indeed, Amazon's School Schedule Policy—the very policy Won has consistently cited as a comparator—repeatedly refers to school schedule adjustments as "accommodations." [SA15 ("School *accommodations* process guidelines…. Employees interested in school *accommodation* opportunities must submit a School *Accommodation* request…. Each site has the discretion to offer options for school *accommodations*….") (emphasis added).]

Despite Amazon's use of the term "accommodation" in this context, there is no debate that the NYCHRL does not independently provide a right for employees to have their school schedules accommodated by employers. Merely using the term "accommodation" – which has a colloquial meaning apart from the NYCHRL[2] – does not impart legal obligations. Amazon understood this when it chose to use "accommodation" repeatedly in reference to school scheduling adjustments. [SA14-15.] Amazon cannot now assign statutory meaning to the term when used by Won in addressing Amazon's policy.

---

[2] Merriam-Webster, Dictionary, https://www.merriam-webster.com/dictionary/accommodation ("something supplied for convenience or to satisfy a need") (accessed Feb. 18, 2026).

Amazon's assertion that Won's discrimination claim is an effort to "recast" her allegedly failed reasonable accommodation claim is also false. [Resp. Br. p.22.] Won's discrimination theory has remained consistent throughout these proceedings. [See ASA054.] Nowhere in Won's complaint did she put forth a cause of action for failure to accommodate. [A35-A48.] Won's claim against Amazon has always been for discrimination, and Won repeatedly alleges in her complaint, as well as her motion papers before the District Court, that Amazon discriminated against her by treating her less well in the terms, conditions, and privileges of her employment because of her caregiving needs. [A42, ¶54; A43 ¶¶60-67; ASA054.]

Amazon admits that it offers accommodations to employees in the form of school schedule adjustments for their own educational pursuits, which are not required in any manner by the NYCHRL. Employee-students are not a protected category under the NYCHRL, and Amazon does not offer school schedule accommodations because they are legally required. Rather, Amazon offers such schedule accommodations because Amazon "strongly support[s] ongoing learning and education" and "[o]ne way [Amazon] show[s] [its] support is through [its] Temporary School Schedule Adjustment Policy." [SA14.] In other words, Amazon has made the deliberate choice to offer schedule adjustments to its employees pursuing education. Amazon has also deliberately decided to deny schedule adjustments requested by employees for caregiving. [A28-29, ¶35; A99, ¶70; A601,

5

¶26.] Amazon's self-imposed policy results in Amazon treating caregivers less well in the terms, conditions, and privileges of their employment and violates the NYCHRL. Indeed, if Amazon had no such policy at all, Won would not be asserting discrimination. But Amazon's choice to "strongly" value education over caregiving, and to show that support by granting scheduling accommodations for educational pursuits that are wholly rejected for caregiving, necessarily results in caregivers being treated less well and violates the NYCHRL.

**II.  The Record Reflects, and Amazon has Repeatedly Admitted, that Amazon Rejected Won's Request Because It Was for Caregiving Needs And Would Have Approved the Request Had It Been For Her Own Educational Needs**

Amazon has repeatedly admitted that Won's request of leaving 15-minutes early and arriving 15-minutes later was denied because of caregiving needs, and that it would have been granted if the request was for her own educational pursuits. For example, in Amazon's "Statement of Undisputed Material Facts" in support of its summary judgment motion, Amazon stated that "[i]f Ms. Won had requested an accommodation, consistent with Amazon policy, to attend to her religious observance, *or to further her own education*, Amazon would have granted the request." [A28-29, ¶35 (emphasis added).] To support this statement of fact, Amazon cited to the "Richman Decl., Ex. 11 (AMAZON-WON000001) at 4

6

(Amazon "told [Ms. Won] that an accommodation would be processed for [Ms. Won's education] and not [her] child")." [*Id*. (parentheticals in original).]

This is consistent with other statements in Amazon's "Statement of Undisputed Material Facts" upon which it moved for summary judgment. For example, Amazon admitted that, categorically, "Amazon does not offer scheduling accommodations for childcare obligations." [A29, ¶36; SA14-19.] In contrast, Amazon admitted that it grants employees schedule modifications to accommodate their own educational pursuits. [A100-101, ¶¶83-86; A601-606, ¶¶26, 27, 30, 34, 36; A247; SA14-15; *see also* Resp. Br., p.8 (acknowledging that Amazon grants "modest adjustments to the start and end time of an [employee's] assigned shift" under its Temporary Schedule Adjustment policy (*citing* SA15-16)).] These admissions alone demonstrate Won has a viable claim for discrimination.

### A. Amazon's New Factual Arguments Raised For the First Time on Appeal Are Not Supported by the Record but At Best Demonstrate Disputes of Material Fact That Must Be Submitted to a Jury

In its Respondent's Brief, Amazon attempts to escape its prior admissions by arguing – for the first time – that Won's request would have been rejected regardless of the reason because it was "out of policy." Amazon falsely asserts that Won requested a "permanent" schedule adjustment, and that granting Won's request would have resulted in her working alone on the warehouse floor through her 15-minute breaks while other employees were on break. [Resp. Br., p.1.]

7

Amazon's purported justifications for rejecting Won's schedule request are entirely improper as they are being raised for the first time on this appeal. They are also entirely dependent on alleged "facts" which are wholly unsupported by any evidence in the record, and even further, directly contradicted by evidence in the record and Amazon's own admissions as set forth above. Indeed, until now, Amazon has consistently stated that it categorically rejects caregiver scheduling adjustments regardless of the parameters of the request. [A28-29, ¶35; A99, ¶70; A601, ¶26; A29, ¶36.]

In fact, the record evidence shows that, as early as July 5, 2019, before Amazon knew anything about the duration of Won's schedule modification request, Amazon had already indicated that it would deny Won's request because it was made for caregiving reasons—not because Won's request amounted to a "permanent" schedule modification. [SA5-6 ("You had called in stating that you wanted to apply for an accommodation as you had to drop your son to school and wanted a 30 minute adjustment for three days in the week. So explained the School Accommodation policy…and told you that an accommodation would be processed for you and not your child.").] Amazon does not cite to any evidence to support that it ever considered Won's request as "permanent" and that this was the reason for denial. Nor can Amazon point to any evidence that it ever inquired about the duration of Won's request – because it never did.

Indeed, Amazon's argument is wholly unsupported and belied by the record. Won's desired schedule adjustment complied with Amazon's policy and was straightforward: During the school semester, on the three weekdays that she worked per week, Won requested to arrive 15-minutes later than her scheduled start time and leave 15-minutes earlier than her scheduled stop time. [A97-98, ¶ 65; A248-249; SA5-6.] This is the exact type of schedule adjustment permitted by Amazon's Temporary Schedule Adjustment Policy which states that Amazon allows "minor schedule adjustments" (SA14-15), including "modest adjustments to the start and end time of an [employee's] assigned shift." [Resp. Br., p.8 (*citing* SA15-16).] The policy also states that "each site has the flexibility to offer options for adjustments" to an employee's schedule. [SA14.]

Amazon's policy does not contain any express temporal limitation on the duration of schedule adjustments, and there is no express limit on the number of adjustments an eligible employee can obtain. [SA14-15.] Won's request was for a school schedule adjustment (albeit for her son) which is allowed under Amazon's School Schedule Policy. [SA14-15.] Like other employees utilizing this policy, Won only needed the schedule adjustment during the school semester, and for a limited time. Thus, Won's request was no more "permanent" in nature than any other employee's school schedule modification permitted by Amazon.

9

Likewise, there is no truth to Amazon's assertion that Won's schedule adjustment request was denied because she "demanded" to work through her two 15-minute breaks. [Resp. Br. pp. 8-9, 14-15, 24-25.] Won simply *offered* to forgo her two 15-minute breaks as an incentive to get the adjustment approved, reasoning that she would not be taking any work time away from Amazon. [A248-249 ("The reason for that is because by law I'm only required after a four-hour shift to take a half an hour break. Amazon granted one half an hour, two 15 minutes breaks, and the request in the 15 minutes at the beginning, at the end, it was a win-win situation for both parties because I wasn't taking any time away from Amazon and I was doing by law what was required, which was 30 minutes.").]

Again, Amazon fails to cite any record evidence that Won demanded to work through her breaks, contingent on her not losing any compensation. In fact, Won's two 15-minute breaks were already paid by Amazon, so she would not gain any compensation by working through them. Won was simply trying to incentivize Amazon to accept her schedule adjustment by showing she would not be forfeiting any work time.[3]

---

[3] Even assuming, *in arguendo*, the 15-minute breaks were unpaid, the difference in weekly pay was negligible. Amazon paid Won $17.50 per hour. [SA3.] Ergo, Won would be forfeiting $8.75 per day for three days per week, for a total pre-tax loss of $26.25 per week.

There is also zero evidence that Amazon denied Won's schedule adjustment because granting it would result in Won working alone on the warehouse floor while other employees were taking their breaks, or that she would "disturb end of shift transitions." [Resp. Br., p.1] Amazon completely mischaracterizes Won's testimony on this point as Won did not testify that employees never worked outside of their shift times or through breaks. [*Id*. at p.24.] Rather, Won testified that employees did work outside of their scheduled shifts and that she was unable to determine from observation whether employees worked through their 15-minute breaks, as it was a "very busy environment" and "people are always doing something." [A255-A258.] In any event, it is inconceivable that "hundreds of – often approaching 1,000 – [employees] assigned to a given shift" would take their breaks at the same exact time, leaving Won alone to contend with Amazon's "conveyor systems" and "powered industrial equipment." [Resp. Br., p.6.]

Amazon bemoans that Won cites no examples of employees obtaining flexible schedules "outside of Amazon's Temporary Schedule Adjustments Policy," but Won doesn't need to. [Resp. Br. pp.24-25.] Won was entitled to the same flexible scheduling adjustments based on her caregiving needs that were granted to other employees for their non-caregiving needs—such as those granted under Amazon's School Schedule Policy. [SA14-15.]

11

In sum, there is no evidence that the duration of Won's schedule adjustment or her offer to work through her breaks were ever the cause of Amazon's rejection of her schedule modification request. That alleged explanation surfaces only now on this appeal. Amazon's false-choice scenario is thus a transparent and desperate attempt to explain their rejection of her request as anything other than based on its caregiving nature. That Won's schedule request was for caregiving, rather than her own school schedule, is undeniably the distinguishing feature, and the reason the request was denied. At best, Amazon's new arguments are disputes of fact that cannot be resolved on summary judgment and must be submitted to a jury.

## B. Amazon's Attempts to Distinguish *Chaplin* and Unprotected Activities Fall Short

Amazon attempts to distinguish *Chaplin* on the basis that Amazon's policy of granting school schedule requests was "an express policy." [Resp. Br. p.27 (citing *Chaplin v. Permission Data, LLC*, 2022 WL 2916778 (N.Y. Sup. Ct.,N.Y. Cnty. July 25, 2022)).] Amazon cannot circumvent the NYCHRL caregiver requirement merely by reducing its discriminatory policies to writing.

Amazon also incorrectly asserts that the denial of the caregiver schedule request in *Chaplin* was discriminatory because it was based on sex. *Id*. In *Chaplin,* the Court unequivocally denied the defendant-employer summary judgment as to plaintiff's NYCHRL *caregiver* discrimination claim because plaintiff was denied a schedule adjustment request for his caregiving duties, which included needing to

12

transport his son to school, while other employees were granted schedule accommodations for non-caregiving reasons, including attending school. *Chaplin*, 2022 N.Y. Misc. LEXIS 35481, at *22-26, 35-36.

Amazon's assertion that if two employees—caregiver and non-caregiver—made the same "out-of-policy" requests, both would be rejected is unilluminating. [Resp. Br. pp.23, 26.] That Amazon could also reject a schedule adjustment request identical to Won's that was submitted by an employee who needed to train for a marathon, for example, has no bearing on Won's claim. This is because training for a marathon is not protected under the NYCHRL, thus, employers are not prohibited from treating marathon runners "less well" in the terms and conditions of their employment. It is meaningless for Amazon to equate caregiving needs with other "out-of-policy" reasons for denial of an employee's schedule request that, unlike caregiving, are *not* protected by the NYCHRL.

If employers could treat the responsibilities of caregiving as less important than other activities or hobbies, employers could circumvent the caregiver protection entirely. Under Amazon's logic, employers could make written policies allowing flexible scheduling for virtually any hobby or activity aside from caregiving (i.e., flexible schedules for taking exercise classes, training for marathons, dance lessons, attending sports games, etc.). Employers could then lawfully deny scheduling requests for caregiving duties on the basis that caregivers could obtain flexible

13

schedules for approved activities or hobbies, but still claim that a caregiver's request for caregiving needs was "out-of-policy."

While the foregoing establishes that the true and sole reason Won's request was rejected was because it was for caregiving reasons, Won need not prove as much to withstand summary judgment. Won merely seeks the opportunity to do so at trial. At a minimum, it is clear that a genuine dispute of material facts exists as to whether Amazon discriminated against Won by denying her caregiver schedule request.

## III. A Plain Reading of the NYCHRL, Legislative Intent, and Agency Guidance all Support Won's Position

Any rational construction of the NYCHRL, including a plain reading of the text, review of legislative history, or consideration of guidance promulgated by the NYCCHR, supports Won's position that scheduling adjustments for caregiving reasons must be permitted to the same extent that such scheduling adjustments are permitted for non-caregiving reasons (other than those already legally required to be granted as reasonable accommodations under the NYCHRL).

### A. Statutory Interpretation and Legislative Intent Support Won's Position

Amazon maintains that no deference should be afforded to agency guidance on caregiver protections under the NYCHRL as the issue here is one of "pure statutory reading and analysis." [Resp. Br. p.33.] However, even pure statutory analysis supports Won's position. "'When presented with a question of statutory

14

interpretation, [the] primary consideration is to ascertain and give effect to the intention of the Legislature.'" *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 77-78, 883 (N.Y. 2008) (quoting *Matter of DaimlerChrysler Corp. v. Spitzer*, 7 N.Y.3d 653, 660 (2006)). "'The language of a statute is generally construed according to its natural and most obvious sense…in accordance with its ordinary and accepted meaning.'" *Id.* (quoting McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 191-194 (1971 ed)).

The natural and obvious construction of the NYCHRL's text prohibits Amazon from discriminating against Won, or treating her "less well," in the "terms, conditions or privileges of employment" because of her status as a caregiver. NYC Admin. Code § 8107(1)(a)(3); *Mihalik*, 715 F.3d at 110. By denying her schedule modification request for caregiving reasons and granting that same benefit to other employees for non-caregiving, non-legally required reasons, such as personal educational pursuits, Amazon plainly discriminated against Won by treating her "less well."

Additionally, as Won demonstrated at length in her appellate papers, there is no question that the "intention of the Legislature" was to prohibit employers from denying scheduling adjustments for caregiving reasons that were granted to other employees for non-caregiving reasons. *Samiento*, 10 N.Y.3d at 77-78; *see also* A616-619 (the legislative body, the Committee on Civil Rights, citing [Dena]

15

Adams' testimony regarding schedule adjustments for caregivers as a reason for enacting the NYCHRL caregiver protection); A622 ("caregivers would be protected from retaliation in asserting their rights…[s]uch retaliation could include…for example, rejecting a caregiver's request for a change to the terms and conditions of their employment while permitting the same request for non-caregiver employees."); A637-638 ("all caregivers would be protected from retaliation for requesting a flexible schedule"); *see also* A629-630 (announcing the enactment of the caregiver discrimination law which was intended to address discrimination for "women like Dena Adams" and highlighting that the law "requires employers to provide leave time and workplace flexibility equally").

Citing testimony by Dena Adams submitted originally to the City Council in 2013, Amazon erroneously asserts that the legislative history "backfires" as it "relates largely to proposals that City Council considered—and rejected." [Resp. Br. p.34.] However, this exact testimony by Ms. Adams, though initially presented in 2013, was expressly referred to by the Committee on Civil Rights in their 2015 Committee Report enacting the *current* version of the caregiver discrimination provision. [A616-619.] The press release announcing the enactment of the *current* version of the law corroborates this. [*See* A629-630 (announcing the enactment of caregiver discrimination law which was intended to address discrimination for

16

"women like Dena Adams" and highlighting that the law "requires employers to provide leave time and workplace flexibility equally").]

The Committee on Civil Rights Report on the *current* caregiver provision also cites the 2013 testimony of the Legal Aid Society, which notes that, "[i]n addition to treating caregivers differently than other employees, employers have historically been reluctant to provide even nominal accommodations for caregivers to meet both their work and familial responsibilities" and that "low-wage workers are often forced out of their jobs because employers deny them minor scheduling adjustments needed to accommodate their caregiving responsibilities." [A616.]

That the testimony of Ms. Adams and Legal Aid are cited by the Committee on Civil Rights as reasons for enacting the *current* version of the caregiver discrimination law (which does *not* require reasonable accommodations) only substantiates Won's position that the caregiver provision as it presently exists requires schedule adjustments to be offered for caregiving reasons to the same extent they are offered for non-caregiving reasons. [A616-619 ("According to Ms. Adams, despite allowing other employees to work predictable hours to accommodate their school schedule, Ms. Adams' employer would not agree to or discuss any of her suggestions. It is because of stories like Ms. Adams that many jurisdictions throughout the country have passed laws protecting caregivers…. In order to provide New Yorkers with similar caregiving protections in the workplace, the Committee

17

has considered and will vote on Proposed Int. No. 108-A, which would add caregiver status to the list of protected classes under the City's Human Rights Law."); A629-630 (announcing the enactment of caregiver discrimination law which was intended to address discrimination for "women like Dena Adams" and highlighting that the law "requires employers to provide leave time and workplace flexibility equally").]

The legislature thus clearly intended that scheduling adjustment requests made for caregiving reasons would be permitted to the same extent that scheduling adjustment requests were granted for non-caregiving reasons (other than those already required to be granted as reasonable accommodations under the NYCHRL).

## B. The NYCCHR Guidance Supports Won's NYCHRL Claim

The NYCCHR Guidance, which unequivocally supports Won's position, should be entitled to deference, or at the very least deemed persuasive. In arguing that the NYCCHR guidance "confirms Amazon's position," Amazon egregiously extracts a vital sentence and represents that the guidance simply states that "employers 'do NOT have to offer accommodations to employees because of their caregiving responsibilities." [Resp. Br. p.34 (*citing* A609).] Critically, the quoted passage states in full:

> Employers do NOT have to offer accommodations to employees because of their caregiving responsibilities. For example, employers are not required to change an employee's shift or allow them to leave work early just because they have caregiving responsibilities. *Employers CANNOT, however, deny these benefits to employees with caregiving responsibilities if they provide these benefits to other employees*.

18

[A608 (emphasis added); A609-610 ("Employers cannot provide certain benefits, like flexible scheduling, to some employees and refuse to provide the same benefits to employees who request them because of their caregiving responsibilities."); A611 ("[The NYCHRL] does not give employees the right to *flexible scheduling* or other changes to the terms and conditions of their employment due to their caregiving responsibilities. Employers *CANNOT, however, deny these benefits to employees with caregiving responsibilities if they provide these benefits to other employees.*") (emphasis added); A611 (providing, as an example of a discriminatory practice, a scenario in which an employee is granted a schedule accommodation of arriving late to work to train for a marathon, but another employee is denied the same schedule accommodation to drive her husband home from chemotherapy appointments before work); *see also* A611 (same).] This is squarely in line with Won's claim that Amazon discriminated against her by offering schedule adjustments for non-caregiving, non-legally required reasons, but improperly denying them for caregiving.

## C. The NYCCHR Guidance Should be Granted Deference, or at the Very Least, Deemed Persuasive

Amazon erroneously claims that the cases Won cites regarding deference to an administrative agency only involve deference to "agency determinations reviewed for 'substantial evidence on the record.'" [Resp. Br. p.33.] However, nearly every single case cited by Won with respect to deference does not review

19

agency determinations or even contain the words "substantial evidence on the record." Rather, when deciding questions of law, the courts in those cases either deferred to agencies' interpretations of the statutes that they are charged with administering or found the agencies' interpretations of such statutes persuasive. *Samiento*, 10 N.Y.3d at 79 (deferring to the NYDOL's interpretation of the New York Labor Law ("NYLL") and holding "the Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference…. The construction given statutes and regulations by the agency responsible for their administration, 'if not irrational or unreasonable,' should be upheld.") (citations omitted); *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 175 (2019) ("we have previously given weight to [the NYSDOL's] opinion letters when deciding whether to defer both to DOL's interpretation of its own regulations as well as the Labor Law.") (citations omitted); *Van Vorst v. Lutheran Healthcare*, 2020 U.S. Dist. LEXIS 234633, at *43 (E.D.N.Y. 2020) (holding that NYCCHR guidance "cannot be ignored…in the face of the holding of the New York Court of Appeals that an agency's 'interpretation of the statute it administers, if not unreasonable or irrational, is entitled to deference.'") (quoting *Salvati*, 72 N.Y.2d at 791); *de la Rosa v. 597 Broadway Dev. Corp.*, 2015 U.S. Dist. LEXIS 158089, *62-63 (S.D.N.Y. Aug. 4, 2015) ("As for definitive interpretations of that statute, the [NYCCHR] is the agency responsible for investigation and adjudication of complaints brought under the

20

NYCHRL…As a general matter, interpretations of a statute by the agency charged with its administration are entitled to deference from courts applying New York law."); *Prerna Singh v. MeetUp LLC*, 750 F. Supp. 3d 250, 257 (S.D.N.Y. Aug. 22, 2024) (referring to NYCCHR guidance and holding that, "[t]hough a city agency's interpretation of the law is not dispositive of the meaning of the law itself, such guidance by the body tasked with interpreting and executing the commands of the law remains persuasive authority.") (citation omitted); *Prerna Singh v. Meetup LLC*, 2024 U.S. Dist. LEXIS 198268, at *8 (S.D.N.Y. Oct. 31, 2024) (acknowledging that NYSDHR is the agency tasked with administering the NYSHRL, and deferring to guidance published by NYSDHR regarding the NYSHRL) (citation omitted); *Ramos v. SimplexGrinnell LP*, 740 F.3d 852, 856 (2d Cir.) (deferring to the DOL's interpretation of NYLL); *Bldg. Trades Emplrs. Educ. Ass'n v. McGowan*, 311 F.3d 501, 507 (2d Cir. 2002) ("We defer to a state agency's interpretation of its own regulations, unless the interpretation is arbitrary or capricious."); *Owens v. PricewaterhouseCoopers LLC*, 786 F. Supp. 3d 831, 845 (S.D.N.Y. 2025) (holding that NYCCHR guidance is persuasive authority); *Long Island Hous. Servs., Inc.*, 2023 U.S. Dist. LEXIS 12330, at *70 (E.D.N.Y. Jan. 24, 2023) (finding the guidance issued by the NYSDHR "persuasive and relevant to the Court's analysis of Plaintiffs' disparate impact claim.").

21

The only other case Won cites which involves an agency determination separately reviewed the factual determinations for "substantial evidence on the record" while reviewing the question of law under the directive that the agency's "interpretation of the statutes it administers, if not unreasonable or irrational, is entitled to deference." *Salvati v. Eimicke*, 72 N.Y.2d 784, 791-792 (N.Y. 1988) (holding that "DHCR's interpretation that the statutes apply to these buildings…is rational and should be upheld.") (citations omitted).

The *Ibhawa* decision relied upon by Amazon as an example of where the Court did not "accord any deference" to a NYSDHR determination on a "question of law" is entirely inapplicable. [Resp. Br. p.34 (citing *Ibhawa v. N.Y. State Div. of Hum. Rts.*, 42 N.Y.3d 744, 252 N.E.3d 1118, 1122 (N.Y. 2024)).] While the *Ibhawa* Court stated that there was "little basis" to rely on the expertise of the NYSDHR on the question of law at hand, it was a U.S. Constitutional law question regarding whether the ministerial exemption under the First Amendment deprived the agency of jurisdiction over the complaint. *Id.* at 746-752. The NYSDHR, of course, does not have specialized competence or expertise in questions of U.S. Constitutional law. *Id*. This is entirely distinct from the instant matter, in which the question of deference pertains to NYCCHR guidance in interpreting the NYCHRL, the very law that the NYCCHR is legislatively empowered to administer. NYC Admin. Code 8-101.

22

Thus, the District Court erred in declining to defer to the NYCCHR Guidance or deeming persuasive its interpretation of the NYCHRL. [*See* A607-611.]

### D. Subsequent Statutes Have No Bearing on Won's NYCHRL Claim

Amazon continues grasping at straws by arguing that the enactment of Int 0780-2024 (effective Feb. 22, 2026), which amends the Earned Safe and Sick Time Act ("ESSTA"), N.Y.C. Admin. Code §§ 20-911, *et seq.*, excludes the possibility that the NYCHRL entitles caregivers to the same scheduling benefits for caregiving as are offered for non-caregiving. Had this been the intention, the legislature could have repealed the NYCHRL's relevant provisions on caregiver discrimination, yet it did no such thing. Amazon tellingly cites to nothing in Int 0780-2024 nor its legislative history to suggest it was enacted to change or repeal the NYCHRL's prohibitions on caregiver discrimination. Amazon's assertion, that there is no legal obligation to abide by provisions of the NYCHRL law because of ESSTA, belies how our legal system operates and is legally untenable.

Even indulging this outlandish argument, the logic easily collapses. Int 0780-2024 amends the ESSTA by providing employees with an additional 32 hours of unpaid sick and safe time. N.Y.C. Admin. Code §§ 20-911. The NYCHRL may offer the same, greater, or lesser scheduling benefits to a caregiver than the ESSTA, depending on the circumstances.

23

For example, if an employer offers no flexible scheduling to any employee (excluding those legally required such as for disability or religion), that employer would not be obligated to provide flexible scheduling for childcare purposes under the NYCHRL. In such instances, the ESSTA might be used, and although not extensive, could offer more leave benefits than the NYCHRL. Conversely, the obligations imposed by the NYCHRL could exceed those imposed under ESSTA. For example, if an employer offered leave time beyond that required by ESSTA for non-caregiving reasons, an employer could be required to offer the same additional leave time for caregiving reasons under the NYCHRL. Similarly, if an employer allows employees to work remotely to accommodate their school schedule or marathon training regimen, the employer would, under the NYCHRL be required to allow such benefits to the same extent they were necessary for caregiving needs. Thus, the ESSTA and the NYCHRL are plainly not duplicative.

One could conjure countless examples where rights under the NYCHRL are coextensive with other provisions. For example, the NYCHRL protects against discrimination against individuals with disabilities, those who are pregnant, and those who are victims of domestic violence *and* requires reasonable accommodations for such individuals. N.Y.C. Admin. Code § 8-107 (1), (15)(a), (22)(a), (27)(b). However, despite the NYCHRL's explicit requirement for providing reasonable accommodations to those protected classes, the ESSTA

24

nonetheless requires specific safe and sick leave for individuals who are ill, attending prenatal appointments, or seeking safety measures as victims of domestic violence. N.Y.C. Admin. Code §§ 20-911, *et seq*. Amazon's argument logically collapses again, as it cannot be maintained that the enactment of the right to certain sick, safe, or prenatal leave in the ESSTA precludes the provision of reasonable accommodations—which could also include leave time or scheduling modifications—under the NYCHRL.

Similarly, the ESSTA requires a covered employer to provide 20 hours of paid prenatal leave for year. NYC Admin. Code 20-913(l). If an employer allowed employees to use 20 hours of paid leave for all medical appointments except those attended for prenatal purposes, an employee would certainly have a cause of action for discrimination under the NYCHRL as well as a claim for violation of the ESSTA. On the other hand, if an employer provides 40 hours of paid leave for medical appointments but refuses to provide those additional 20 hours above what ESSTA requires for purposes of attending prenatal medical appointments, an employee would likely have a discrimination claim under the NYCHRL, even though no violation of the ESSTA occurred. Thus, the ESSTA could provide rights that are equal to or greater than the NYCHRL.

Indeed, it has been expressly recognized that the exact same claim—such as one alleging a cause of action for "sick leave under the administrative code" and

asserting that retaliatory actions dissuaded the plaintiff from complaining of discrimination—could evoke the protections of both the NYCHRL and the ESSTA simultaneously. *Jennifer Shin v. NBC Universal Media, LLC*, 2025 U.S. Dist. LEXIS 22561, at \*27-28 (S.D.N.Y. Feb. 7, 2025) ("that claim could refer to multiple provisions of New York City's Administrative Code. It could refer to disability-related retaliation under the NYCHRL…. It could alternatively refer to violation of the [ESSTA], which states that an employer may only require documentation if an employee is absent more than three consecutive work days for sick time. See N.Y.C. Admin. Code § 20-914(a)(2)…. It could refer to another provision of the [ESSTA] which prohibits adverse employment actions against any employee that penalizes the employee for, or is reasonably likely to deter the employee from, using their sick leave as provided in the Act.") (citing See NYC Admin. Code § 20-918(b)).

Merely because certain rights under the NYCHRL may be coextensive with the ESSTA does *not* mean that the ESSTA is evidence that such rights under the NYCHRL never existed. Amazon's citation to *AMG Capital Mgmt., LLC v. FTC* is thus unavailing since, unlike here, the two provisions at issue there would have been completely duplicative of one another. 593 U.S. 67, 68 (2021) ("The Court does not believe Congress would have enacted §19s provisions expressly authorizing monetary relief if §13(b) already implicitly allowed the Commission to obtain that same monetary relief without satisfying §19s conditions and limitations.").

26

**IV. Amazon's Discriminatory Denial of Won's Scheduling Request is Independently Actionable and the Hostile Comments Only Bolster Won's Claim**

There is more than enough evidence that Amazon would have granted Won's scheduling request if it was for her own school schedule, but denied the request only because it was for her caregiving duties, and for a jury to find in Won's favor on her claim for caregiver discrimination. As such, Won need not point to any further evidence to survive summary judgment and submit the issue of whether she was treated less well than others to a jury. *Mihalik*, 715 F.3d at 110.

Amazon's attempts to distinguish *Huntly* and *Palmer* fall flat. *See* Resp. Br. pp. (citing *Huntley v. City of New York*, 2024 WL 3070013 (N.Y. Sup. Ct., N.Y. Cnty. June 20, 2024); *Palmer v. Cook*, 65 Misc. 3d 374 (N.Y. Sup. Ct., Queens Cnty. 2019)). Amazon's contentions, that these cases also involve other acts of discrimination against caregivers, such as hostile statements, is neither here nor there. This does not prove that the denial of scheduling adjustments for caregiving when such requests are granted for non-caregiving reasons is not "independently actionable." *See id*.

The additional hostile comments cited by Won are not dispositive of her claim but serve only to bolster it. Despite Amazon's insistence that many of these comments are immaterial, the NYCHRL is clear that, in raising an inference of discrimination, "the totality of the circumstances must be considered because 'the

27

overall context in which [the challenged conduct occurs] cannot be ignored." *Mihalik*, 715 F.3d 102, 113 (2d Cir. 2013) (quoting *Hernandez*, 957 N.Y.S.2d at 59). The negative comments and actions here occurred precisely in the context of Amazon flatly denying Won's scheduling request based on her caregiving responsibilities and further bolster what Amazon has already outright admitted on countless occasions. [A99, ¶¶ 72-73; A227-228.]

Accordingly, the foregoing comments only reinforce Won's claim of discrimination. The evidence in the record of Amazon's denial of Won's scheduling request is sufficient in and of itself to meet Won's burden, thereby warranting vacatur of the District Courts Order and Judgment. *Mihalik*, 715 F.3d at 110.

## CONCLUSION

The District Court erred in dismissing Won's claim for caregiver discrimination under the NYCHRL. There is substantial evidence, and outright admissions by Amazon, that Won's request would have been granted had it been for her own schooling rather than for her caregiving duties. This is more than sufficient for a jury to ultimately find that Amazon treated Won "less well" on this basis and is precisely the inequitable treatment that the NYCHRL, its legislative history, the NYCCHR guidance, and related caselaw prohibit. Accordingly, for the reasons set forth above, the District Court's Order and Judgment granting summary judgment

28

to Amazon must be vacated with respect to Won's NYCHRL discrimination claim, along with such other and further relief that this Court deems just and proper.

Dated: March 4, 2026
      New York, New York               Respectfully submitted,

By:  /s/  LaDonna M. Lusher
        LaDonna M. Lusher, Esq.
        Alanna R. Sakovits, Esq.
        Kara Miller, Esq.
        **VIRGINIA & AMBINDER, LLP**
        40 Broad Street, 7th Floor
        New York, NY 10004
        Tel.: (212) 943-9080
        Fax: (212) 943-9082
        llusher@vandallp.com
        asakovits@vandallp.com

        *Attorneys for Plaintiff-Appellant*

29

## **<u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,457 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated: March 4, 2026
       New York, New York       Respectfully submitted,

       By:  /s/  LaDonna M. Lusher
       LaDonna M. Lusher, Esq.
       Alanna R. Sakovits, Esq.
       Kara Miller, Esq.
       **VIRGINIA & AMBINDER, LLP**
       40 Broad Street, 7th Floor
       New York, NY 10004
       Tel.: (212) 943-9080
       Fax: (212) 943-9082
       llusher@vandallp.com
       asakovits@vandallp.com

       *Attorneys for Plaintiff-Appellant*